tpl:MMP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6197-CR-FERGUSON
MAGISTRATE JUDGE SNOW

UNITED STATES OF AMERICA,   )
                            )
                            )
          Plaintiff,        )
                            )
v.                          )
                            )
FRANCISCO PEREZ             )
                            )
          Defendants.       )
_____/

NIGHT BOX
FILED

SEP 2 2 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney and files this Response In Opposition To Defendant's Motion to suppress Identification and in support thereof states as follows:

1) the defendant moves this court to suppress physical evidence seized and statements made to law enforcement officers pursuant to a stop at Fort Lauderdale International Airport (FLIA) on July 12, 2000 at approximately 6:30 am.

2) A lone Latin male, later identified as Franciso Ignacio Perez, was observed walking into terminal four at FLIA. Perez repeatedly scanned the airport area as if conducting counter surveillance. Perez was also observed looking around nervously while he stood in line to purchase his ticket. Perez wore a large

baggy Hawaiian shirt that was worn outside of his pants in a manner that law enforcement officers know is used by carriers of controlled substances who are trying to conceal bulky packages of narcotics. Perez was observed pulling and adjusting his shirt down over his waist area while looking at his mid section and appearing very nervous.

3) Broward County Sheriff's Detectives Robert Wolfkill and Jose Interian approached Perez in the ticket line and identified themselves as law enforcement officers, in Spanish and English and displayed their respective badges and photo identification. Perez was asked if he would speak with the detectives to which he agreed. When asked the purpose of his travel, Perez advised that he had recently flown down from New York to Fort Lauderdale to pay some debts. When specifically asked where the debts where located, Perez advised that the debts were located in the Orlando area. When Detective Interian asked Perez why he did not fly directly to Orlando, Perez appeared very nervous and stated that he did not know why. Perez' hands began to tremble and his carotid artery began to pulsate more rapidly.

4) Based on this information, the detectives waited for Perez to finish his business at the ticket counter and requested that Perez accompany them away from the ticket line to permit them to the search his carry-on bag and his person. Perez consented to a search of his luggage and his person.

5) Detective Iterian conducted a pat down of Perez' mid section and felt what appeared to be a plastic bag or bags

containing hard pellets.[1] Detective Iterian then inquired if Perez had narcotics concealed in his pants, to which Perez replied "Yes". In order to continue the search in a more private area, Perez was placed in investigative detention and escorted to the detectives' office where he voluntarily consented to removal of his pants.

6) Upon removal of Perez' pants, the detectives observed a pair of black spandex shorts containing three (3) clear plastic bags containing whitish pellets which field tested positive for the presence of heroin.

7) Perez was placed under arrest and advised of his constitutional rights per Miranda in his native language of Spanish by Detective Iterian, a native Spanish speaker. Perez advised that he understood his rights and wanted to waive those rights and make a statement to the detectives and answer question. Perez advised that he knew that he was transporting heroin, that he was a courier for the transportation of the heroin from South Forida to New York City for further distribution. Perez advised that he was paid $800 for transporting the heroin. (See executed advise of rights form attached as government's exhibit 1).

**Memorandum of Law**

---

[1] Detective Interian has been working at the DIU at Fort Lauderdale international for two years and has been involved in dozens of cases where heroin couriers have transported heroin in this manner.

Encounters between the police and citizens are governed by the Constitution of the United States. Absent reasonable suspicion the police encounters must not be intrusive. In his motion, the defendant alleges that the detectives ordered him to accompany them away from the ticket counter and searched both the defendant and his bag without his consent. The defendant further opines that the detectives did not have probable cause or reasonable suspicion that the defendant was committing a crime. (See defendant's motion at pg 2).

An encounter may constitute a seizure from the outset, or an initially consensual encounter between an Officer and an individual may escalate into a Fourth Amendment seizure. A seizure occurs when, in view of the circumstances, a reasonable person would believe he or she was not free to leave the presence of the officer. *United States v. Mendenhall*, 446 U.S. 544 (1980).

Officers may briefly detain a person for questioning when the officer has a reasonable suspicion based on specific articulable facts that the person stopped is, was, or is about to be engaged in a violation of a law the officer has the authority to enforce. *Terry v. Ohio*, 392 U.S. 1 (1968). An officer has not seized a person merely by inquiring about identity, requesting some identification or requesting consent to search luggage or other areas. *United States v. Rodriguez-Franco*, 749 F.2d 1555 (11th Cir. 1985) (Border Patrol agents at a shopping mall inquired concerning

citizenship).

In connection with a detention under these circumstances, officers may conduct a "frisk" pat down search of the outer clothing of the individual for weapons to protect their safety and the safety of others if the officers reasonably conclude the individual may be armed and dangerous. The officers may reach inside the outer clothing to remove any item they believe to be a weapon. The officer may not, however, remove an item from the suspect's clothing that the officers do not reasonably believe is a weapon, unless the incriminating character of the object subject to seizure is immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366 (1993) (approving "plain feel" doctrine); *Pennsylvania v. Johnson*, 54 Crim. L. Rep. 1054, 62 U.S.L.W. 2247 (Pa. Sup. Ct. 1993) (true nature of drugs immediately apparent to experienced officer who during lawful pat-down felt a "crunchy. Granular substance" in crotch area of narcotics suspect).

To determine whether an officer's articulated suspicions are "founded" or reasonable." the courts will examine the totality of the circumstances, including: (1) objective observations, (2) information in police reports, (3) modes or patterns of operation of certain types of lawbreakers, (4) informant's tips and (5) all other pertinent information. Such evidence must be weighed in light of the particular officer's training and experience, and viewed with common sense deductions about human behavior. The

whole picture must yield a reasonable suspicion that the particular individual stopped is engaged in criminal activity. *United States v. Tehrani*, 49 F.2d 54, 59-60 (2d Cir. 1990).

Applying the above *Tehrani* analysis to the facts of this case, it is clear that the detectives had reasonable suspicion to believe that Perez was transporting a controlled substance. Perez' counter surveillance at the airport, coupled with his wearing of baggy clothes known to be worn by drug couriers, followed by his incredible explanation of his travel plans and visible signs of nervousness when talking with the detectives most certainly provided the reasonable suspicion necessary for the detectives to request that he permit them to pat him down and search his luggage. Moreover, Perez consented to this limited search. When detective Interian, an experienced drug interdiction detection patted down Perez' groin area, the same area concealed by the Hawaiian shirt and area that Perez had been observed rearranging, the detective felt hard pellets consistent with his experience of other drug couriers. The detective then asked Perez if he had drugs concealed in his pants to which Perez replied that he did. The detective then placed Perez in investigative detention and escorted Perez to the detective's office where a through search of Perez recovered the heroin. The detectives then advised Perez of his constitutional rights as detailed above and Perez expressly stated that he understood his rights and elected to waive those rights and make a

detailed statement to the detectives. This express waiver of rights corroborates the detectives version of the events and underscores the fact that Perez knowingly consented to initially talking with the detectives and knowingly consented to the search of his person and carry on bag.

Viewing the events under a totality of the circumstances and apply the applicable case law cited above, the initial stop and eventual seizure from Perez was constitutionally permissible.

WHEREFORE, based on the above it is respectfully submitted that the defendant's motion to suppress be denied.

                         Respectfully submitted,

                         GUY A. LEWIS
                         UNITED STATES ATTORNEY

By: _____
    THOMAS P. LANIGAN
    Assistant United States Attorney
    Florida Bar #A550003
    U.S. Courthouse/Federal Building
    500 E. Broward Boulevard
    Fort Lauderdale, Florida  33301
    (954) 356-7255 ext. 3590

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the below named on this 22nd day of September, 2000.

Martin Bidwell, AFPD
101 NE 3rd Ave
Fort Lauderdale, FL
33301

                    _____
                    THOMAS P. LANIGAN
                    ASSISTANT UNITED STATES ATTORNEY

**GOVERNMENT EXHIBIT 7**

STATEMENT OF RIGHTS AND WAIVER — UNITED STATES DEPARTMENT OF JUSTICE

| Lugar 300 Terminal Drive, Fort Lauderdale, FL | Fecha 07-12-00 |
|---|---|
| Nombre FRANCISCO IGNACIO PEREZ | Case No. |

## AVISO DE DERECHOS

Antes de que le hagamos cualquier pregunta, usted debe de comprender sus derechos.
Usted tiene el derecho de guardar silencio. Cualquier cosa que usted diga puede ser usada en su contra en un juzgado de leyes, o en cualquier procedimiento.
Usted tiene el derecho de hablar con un abogado para que el lo aconseje antes de que le hagamos alguna pregunta, y de tenerlo presente con usted durante las preguntas.
Si usted no tiene el dinero para emplear a un abogado, se le puede proporcionar uno antes de que le hagamos alguna pregunta, si usted lo desea.
Si usted decide contestar nuestras preguntas ahora, sin tener a un abogado presente, siempre tendra usted el derecho de dejar de contestar cuando guste.
Usted tambien tiene el derecho de dejar de contestar cuando guste, hasta que puede hablar con un abogado.

Entiende usted a sus derechos? Su firma siguiente significa que usted entiende los derechos interiores.

Det. Jose R.C.  #9461    07-12-00          X  [firma]
Testigo                  Fecha              Firma
       Wolfkill  21146  07-12-00
Testigo                  Fecha

## RENUNCIA

He leido esta declaracion de mis derechos y comprendo lo que son mis derechos.
Estoy dispuesto a dar una declaracion y a contestar preguntas. Por ahora no deseo un abogado. Comprendo y se lo que estoy haciendo. No me han hecho promezas ni me han amenazado, ni han usado presion o fuerza en me contra.

Yo fui arrestado en (hora) ___0640 hrs.___ en (fecha) _07-12-00_
_____ y he firmado este documento en (hora) _0700 hrs._.

Det. Jose R.C.  #9461   07-12-00                    Firma
Testigo                                              X  [firma]
        Wolfkill  21146
Testigo

Comentos: _____