TPL:tpl

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6197-CR-FERGUSON
MAGISTRATE JUDGE SNOW

UNITED STATES OF AMERICA, )
)
)
Plaintiff, )
)
v. )
)
FRANCISCO PEREZ )
)
Defendants. )
_____/

**GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION GRANTING DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney and files this Government's Objections To Magistrate Judge's Report and Recommendation Granting Defendant's Motion to suppress evidence. The government respectfully requests a de novo review and a de novo determination of the specific proposed findings in the Report and Recommendation of the Magistrate Judge to which the government specifically objects and in support thereof states as follows:

BACKGROUND

On July 12, 2000, a lone Latin male, later identified as Franciso Ignacio Perez, was observed by Broward County Sheriff's Officer (BSO) Jose Interian and Hollywood, Fl. Police Officer



Robert Wolfkill walking into terminal four at Fort Lauderdale International Airport (FLIA) (DE:31 pg 10)[1]. Perez repeatedly scanned the airport area as if conducting counter surveillance (DE:31 pgs 11,64). Perez was also observed looking around nervously while he stood in line to purchase his ticket. Perez wore a large baggy Hawaiian shirt that was worn outside of his pants (DE:31 pgs 12, 66). These officers know this manner of dress is used by carriers of controlled substances who are trying to conceal bulky packages of narcotics(DE:31 Pgs 39-40). Perez was observed pulling and adjusting his shirt down over his waist area while looking at his mid section and appearing very nervous (DE:31 pgs 13, 66). These adjustments were done by Perez five to seven times in a time span of approximately ten minutes while Perez waited in the ticket line (DE:31 pgs 14,74).

Based on these observations Officers Wolfkill and Interian approached Perez at the ticket counter and identified themselves as law enforcement officers, in Spanish and English and Officer Interion displayed his badge, photo identification and purpose at the airport (DE:31 pgs 15,69). Perez was asked if he would speak with the officers (DE:31 pgs 15,69). When asked the purpose of his travel, Perez advised that he had recently flown down from New York to Fort Lauderdale to pay some debts (DE:31 pg 24). When specifically asked where the debts where located, Perez advised

---

[1] On October 16, 2000, Magistrate Judge Lurana S. Snow presided over an evidentiary hearing in this matter. The transcript of that hearing is Docket Entry 31(DE:31) and will be referred to by that designation.

that the debts were located in the Orlando area (DE:31 pg 24). When Detective Interian asked Perez why he did not fly directly to Orlando, Perez appeared very nervous and stated that he did not know why. Perez' nervousness increased and he began looking at the ground, avoiding eye contact with Officer Interion(DE:31 pg 24). Perez finished his business at the ticket counter and began walking towards the terminal (DE:31 pgs 16,70). Based on these observations, the officers waited for Perez to finish his business at the ticket counter (DE:31 pg 16, ). When Perez finished his business and began walking towards the terminal, the officers walked along side Perez and Officer Interion continued to speak with Perez (DE:31 16,70). Officer Interion asked for consent to search Perez' bag and his person to which Perez consented (DE:31 pg 16). When administered the standard questions regarding possession of his luggage and advised of smuggling problem at the airport, Perez became increasingly nervous with his carotid artery pulsating and his eyes fluttering (DE:31 pg. 18).

Perez then again consented to a search of his luggage and his person and handed his carry on luggage to Officer Interian(DE:31 pgs 16,71). The search of Perez' carry on luggage was negative for contraband (DE:31 pg.71). Detective Interian then conducted a pat down of Perez' mid section and felt what appeared to be a plastic bag or bags containing hard pellets.[2] (DE:31: pg 18). Detective

---

[2] Detective Interian has been working at the DIU at Fort Lauderdale international for two years and has been involved in dozens of cases where heroin couriers have transported heroin in

3

Iterian then told Perez that he (Perez) had narcotics concealed in his pants, to which Perez replied "Yes" (DE:31 pg 19). When asked whether the drugs were heroin or cocaine Perez advised that he had heroin (DE:31 pg 19). In order to continue the search in a more private area, Perez was handcuffed and escorted to the officers' office where his pants were removed (DE:31 pg 20). Upon removal of Perez' pants, the officers observed a pair of black spandex shorts containing three (3) clear plastic bags containing whitish pellets which field tested positive for the presence of heroin (DE:31 pg 20).

Perez was placed under arrest and advised of his constitutional rights per Miranda in his native language of Spanish by Officer Interian, a native Spanish speaker(DE:31 pg 21). Perez advised that he understood his rights and wanted to waive those rights and make a statement to the officers and answer questions and sign the waiver of rights form (DE:31 pg 22). Perez advised that he knew that he was transporting heroin and that he was a courier for the transportation of the heroin from South Florida to New York City for further distribution (DE:31 pgs 25-27). Perez advised that he was paid $800 for transporting the heroin (DE:31 pgs 25-27).

---

this manner.

**Memorandum of Law**

In the Report and Recommendation issued November 30, 2000, the Magistrate Judge opines that the government has failed to demonstrate that the police had a reasonable suspicion that the defendant was engaged in criminal activity, and that his detention for questioning was unlawful. The court further opines that the government has not met its burden of proving that the defendant's consent to the search of his person and luggage was voluntarily given.

It appears that the magistrate judge relied heavily on Reid v. Georgia, 448 U.S. 438, 440 in reaching her decision. Although Reid, is helpful, a review of other cases will further define reasonable suspicion in this type of encounter. It is well settled that encounters between the police and citizens are governed by the Constitution of the United States. Absent reasonable suspicion the police encounters must not be intrusive. It is well settled that citizen-police contact cannot be based upon race.[3] Although the Fourth Amendment does not require any level of suspicion for a routine airport encounter in which a police officer approaches a traveler and poses questions to him, such an encounter violates

---

[3]Although the Report and Recommendation does not address any "racial profiling", it was repeatedly alleged by the defense in the evidentiary hearing and denied by government witnesses.

5

equal protection principles if the officer selects the traveler for questioning based upon the race of the traveler. If the officer initiates the consensual encounter for several reasons, some of which are permissible and some of which are impermissible, there is no equal protection violation. In addition, the burden is on the defendant to establish that the decision to initiate the encounter was predicated upon impermissible factors such as race. United States v. Travis, 62 F.3d 170 (6th Cir. 1995), *cert.denied*, 516 U.S. 1060 (1996) Posing questions to a suspect in an airport terminal does not constitute a seizure.

When two police officers approached a suspect in the terminal of an airport and posed "a few initial questions," no seizure occurred. Hence, the Fourth Amendment was not implicated, and the defendant's argument that the officers needed "at least a reasonable suspicion to even approach him is simply wrong." United States v. Tillman, 963 F.2d 137 (6th Cir. 1992)

Similarly, a request for airline ticket and identification is not a seizure under United States v. Winfrey, 915 F.2d 212 (6th Cir. 1990), no seizure occurred where police officers approached defendant, asked for his ticket (which was voluntarily produced) and ID (which defendant denied having), and accompanied him to a public seating area and asked about ownership of a black travel bag. United States v. Frazier, 936 F.2d 262 (6th Cir. 1991) Accord United States v. Collis, 766 F.2d 219 (6th Cir.), *cert.denied*, 474

6

U.S. 851 (1985)

There are three types of contact that occur between police officers and the traveling public at an airport: (1) officers may approach an individual to ask if he is willing to answer questions; (2) officers may stop an individual based on reasonable suspicion; and (3) officers may stop an individual where there is probable cause to believe that a crime has been committed. *United States v. Flowers*, 909 F.2d 145 (6th Cir. 1990) )Contact initiated without any articulable suspicion).

A permissible "police-citizen contact" occurs when a police officer approaches a citizen in a public place and asks whether he is willing to answer questions. The test is an objective one, "looking to the reasonable man's interpretation of the conduct in question," which does not vary with the state of mind of the individual being approached. *United States v. Cooke*, 915 F.2d 250 (6th Cir. 1990).

An encounter may constitute a seizure from the outset, or an initially consensual encounter between an Officer and an individual may escalate into a Fourth Amendment seizure. A seizure occurs when, in view of the circumstances, a reasonable person would believe he or she was not free to leave the presence of the officer. United States v. Mendenhall, 446 U.S. 544 (1980).

Officers may briefly detain a person for questioning when the officer has a reasonable suspicion based on specific articulable

facts that the person stopped is, was, or is about to be engaged in a violation of a law the officer has the authority to enforce. Terry v. Ohio, 392 U.S. 1 (1968). An officer has not seized a person merely by inquiring about identity, requesting some identification or requesting consent to search luggage or other areas. United States v. Rodriguez-Franco, 749 F.2d 1555 (11th Cir. 1985) (Border Patrol agents at a shopping mall inquired concerning citizenship).

To determine whether an officer's articulated suspicions are "founded" or reasonable." the courts will examine the totality of the circumstances, including: (1) objective observations, (2) information in police reports, (3) modes or patterns of operation of certain types of lawbreakers, (4) informant's tips and (5) all other pertinent information. Such evidence must be weighed in light of the particular officer's training and experience, and viewed with common sense deductions about human behavior. The whole picture must yield a reasonable suspicion that the particular individual stopped is engaged in criminal activity. United States v. Tehrani, 49 F.2d 54, 59-60 (2d Cir. 1990).

Applying the above Tehrani analysis to the facts of this case, it is clear that the officers had reasonable suspicion to believe that Perez was transporting a controlled substance. In the case at bar, the officers observed a traveler leaving a known drug source city to a known drug destination city exhibiting very suspicious and nervous behavior. Perez was observed conducting counter surveillance at the airport. These facts along with Perez' wearing

of baggy clothes known to be worn by drug couriers, followed by his incredible explanation of his travel plans along with visible signs of nervousness when talking with the officers most certainly provided the reasonable suspicion necessary for the officers to request that he continue talking with them and later request consent to permit them to search him and his luggage.

Moreover, the record is clear that Perez consented to this limited search. Although the Magistrate Judge did not make express findings of credibility in the Report and Recommendation, it is noteworthy that the R & R did not address the fact that Defendant Perez' direct and cross examination testimony was replete with numerous "I don't remember" or "I don't recall" responses when asked questions on key points (DE: 31 pgs 79-80, 87-91,96). This selective memory should be considered when making credibility determinations on the issue of consent.

When Officer Interian, an experienced drug interdiction officer, patted down Perez' groin area, the same area concealed by the Hawaiian shirt and area that Perez had been observed rearranging, the officer felt hard pellets consistent with his experience of other drug couriers. Officer Interion then asked Perez if he had drugs concealed in his pants to which Perez replied that he did. The officer then placed Perez under arrest and escorted Perez to the officer's office where a thorough search of Perez recovered the heroin. Officer Interion then advised Perez of his constitutional rights as detailed above and Perez expressly stated that he

9

understood his rights and elected to waive those rights and make a detailed statement to the officers.[4] This express waiver of rights corroborates the officers' version of the events and underscores the fact that Perez knowingly and voluntarily consented to initially talking with the officers and knowingly and voluntarily consented to the search of his person and carry on luggage.

Viewing the events under a totality of the circumstances and applying the applicable case law cited above, the initial stop and eventual seizure from Perez was based on reasonable suspicion and hence constitutionally permissible.

WHEREFORE, based on the above it is respectfully submitted that this honorable court conduct a de novo review of the defendant's motion to suppress evidence and not adopt the Magistrate Judge's report and Recommendation granting the Defendant's motion to suppress evidence.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: /s/ Thomas P. Lanigan

THOMAS P. LANIGAN
Assistant United States Attorney
Florida Bar #A550003
U.S. Courthouse/Federal Building
500 E. Broward Boulevard
Fort Lauderdale, Florida 33301
(954) 356-7255 ext. 3590

---

[4] Perez testified that it was his signature on the advise of rights and waiver form but he did not remember reading or signing the form.

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was sent to the below named on this ___day of December, 2000.

Martin Bidwell, AFPD
400 Australian Ave South suite 300
West Palm Beach, FL
33401

THOMAS P. LANIGAN
ASSISTANT UNITED STATES ATTORNEY

11